**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DANIEL COLE JAMES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11-CV-010-TCK-FHM** |
| | ) | |
| **TERRY MARTIN, Warden,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state prisoner appearing

pro se. Respondent filed a response to the petition (Dkt. # 8) and provided the original record and

trial transcripts (Dkt. ## 10, 11) for the Court's use in evaluating Petitioner's claims. Petitioner filed

a reply (Dkt. # 14) to Respondent's response. On July 3, 2013, Petitioner filed a motion to amend

(Dkt. # 20). By Opinion and Order filed November 19, 2013 (Dkt. # 24), the Court granted the

motion in part, and denied it in part, and directed the Clerk to file the motion to amend as a

supplement to the petition. The Clerk filed the supplement (Dkt. # 25) of record as of July 3, 2013.

For the reasons discussed below, the Court finds the habeas petition, as supplemented, shall be

denied.

### BACKGROUND

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct. Following review of the record, trial transcripts, trial exhibits, and other materials submitted

---

[1] Terry Martin is the current warden of Dick Conner Correctional Center where Petitioner is in custody. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases, and Rule 25(d)(1), Federal Rules of Civil Procedure, Terry Martin is the proper respondent and is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note such substitution on the record.

by the parties, the Court finds the summary by the Oklahoma Court of Criminal Appeals (OCCA)

is adequate and accurate.  Therefore, the Court adopts the following summary as its own[2]:

> Appellant, Daniel Cole James, was convicted by a jury in Tulsa County District Court, Case No. CF-2004-3354, of Count 1: Rape by Instrumentation (21 O.S.2001, § 1111) and Count 2: Lewd Molestation (21 O.S.Supp.2002, § 1123). The jury sentenced Appellant to 35 years imprisonment on Count 1, and to 20 years imprisonment on Count 2. On October 23, 2007, the Honorable Thomas C. Gillert, District Judge, sentenced Appellant in accordance with the jury's recommendation. This appeal followed.
>
> Appellant was charged with sexually abusing B.M., the four-year-old daughter of a family friend, by placing his finger in her vagina and his penis in her mouth several times between August 2002 and May 2003. The child, who was nine years old at the time of this trial, testified that Appellant ejaculated in her mouth on more than one occasion. The State presented the testimony of B.M.'s older sister, to whom she first disclosed the allegations in 2004, and the testimony of Jamie Vogt, a forensic interviewer, who spoke with B.M. after B.M.'s mother notified the authorities. The State also presented evidence that over a decade before the instant offenses, Appellant had sexually abused a former step-daughter in a similar manner. That witness, R.G., who was eighteen years old at the time of this trial, testified that in 1992, when she was approximately three years old, Appellant placed his penis in her mouth and ejaculated on two occasions. R.G.'s mother, Appellant's ex-wife, testified to the circumstances surrounding R.G.'s disclosure of the abuse.
>
> R.G.'s testimony about other acts of sexual abuse committed by Appellant had also been presented in Appellant's first trial. Appellant was convicted; on direct appeal, we held that this evidence was improperly admitted, and remanded for a new trial. We reasoned that because the jury was not properly instructed on the limited use of other-crimes evidence, it may have used that testimony as substantive evidence that Appellant sexually abused B.M. James v. State, 2007 OK CR 1, ¶ 4, 152 P.3d 255, 257.
>
> A few months after James was handed down, the Oklahoma Legislature enacted 12 O.S. §§ 2413 and 2414, which specifically addressed the type of other-crimes evidence challenged in that appeal. Laws 2007, S.B. 917, Ch. 76, §§ 1-2 (eff. April 30, 2007). Section 2413 applies to cases where the defendant is charged with enumerated offenses involving "sexual assault"; § 2414 applies to cases where the defendant is charged with crimes defined as "child molestation." 12 O.S.Supp.2007, §§ 2413(A), (D); 2414(A), (D). Each statute provides that evidence of other, specified offenses of a sexual nature "is admissible, and may be considered for its bearing on any matter to which it is relevant." 12 O.S.Supp.2007, §§ 2413(A),

---

[2]Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to the court's analysis.

> 2414(A) (emphasis added). Before Appellant's retrial, the State gave notice of its intention to admit evidence about R.G.'s claim of sexual abuse, citing these recently-enacted provisions. The trial court admitted the evidence over objection by the defense.

(Dkt. # 8-3, <u>James v. State</u>, 204 P.3d 793, 794-95 (Okla. Crim. App. 2009) (footnotes omitted)

(hereinafter <u>James II</u>)). During trial proceedings, Petitioner was represented by attorney Kevin

Adams.

Represented by attorney Lisbeth L. McCarty, Petitioner filed a direct appeal following his

retrial.  Petitioner raised two (2) propositions of error, as follows:

> Proposition 1:  The use of other crime evidence against appellant constituted an ex post facto violation.

> Proposition 2:  Evidence of a thirteen-year old unproved allegation of [a] crime was more prejudicial than probative and denied him his constitutional right to a fundamentally fair trial.

(Dkt. # 8-1).  In a published Opinion, the OCCA affirmed the judgment and sentence of the district

court. <u>James II</u>, 204 P.3d at 797.  Petitioner filed a petition for a writ of certiorari at the United State

Supreme Court on July 31, 2009, Case No. 09-5763.  His petition was "considered closed" on

December 9, 2009.[3]  (Dkt. # 1; <u>see also</u> Dkt. # 22-1, <u>James v. Oklahoma</u>, No. 09-5763 (U.S. 2009)).

On July 1, 2010, Petitioner filed an application for post-conviction relief in Tulsa County

District Court.  (Dkt. # 8-4 at 1).  By Order filed August 31, 2010, the district court denied post-

conviction relief.  <u>Id.</u> at 29-47.  On September 24, 2010, Petitioner filed a post-conviction appeal

to the OCCA, Case No. PC-2010-915, raising eleven (11) propositions, as follows:

---

[3]In his case before the United States Supreme Court, Petitioner filed a motion to proceed in forma pauperis.  The Court denied the motion on October 13, 2009, and directed Petitioner to "pay the docketing fee required . . . and to submit a petition in compliance with Rule 33.1 of the Rules of this Court." (Dkt. # 22-1).  The next, and final, docket entry is that of December 9, 2009, closing the case.

Proposition 1:     The district judge . . . erred when he presided over the post-conviction application proceedings, because several of the claims presented were a direct result of his actions and/or deficiencies during trial.

Proposition 2:     [The trial judge] erred when he presided over the post conviction application proceedings, because he failed to follow the rules of post-conviction procedures.

Proposition 3:     Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim for a mistrial when [the trial judge] had improper communication with the jury outside the courtroom.

Proposition 4:     Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim that the State had failed to establish the 1992 allegations clearly and convincingly as required by Oklahoma law.

Proposition 5:     Appellate counsel was deficient and ineffective when he failed to raise a claim of judicial abuse of discretion against [the trial judge] when he allowed the State to present to the jury a false, third-party, inadmissible hearsay statement through cross-examination of a defense witness, violating Petitioner's guaranteed right to cross-examination under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution.

Proposition 6:     Trial counsel was deficient and ineffective when he failed to object to the telephone message, evidence he knew, or should have known, was false.

Proposition 7:     Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim of judicial error against [the trial judge] and failed to request corrective relief for incorrect jury instructions given by the judge.

Proposition 8:     Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim that the State could not prove every element of the charged offenses following the testimony of Jamie Vogt, the forensic interviewer.

Proposition 9:     Both trial and appellate counsel were ineffective when they failed to raise a claim that B.M.'s allegation of lewd molestation was unworthy of belief.

Proposition 10:    Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim that there was insufficient evidence to convict Petitioner on the charged offense of rape by instrumentation.

Proposition 11:    Both trial and appellate counsel were deficient and ineffective when they failed to raise a claim of judicial abuse of discretion against the [trial judge], when he admitted the 1992 allegations into Petitioner's second trial subjecting Petitioner to double/former jeopardy.

(Dkt. # 8-4).   In an Order dated December 16, 2010, the OCCA affirmed the denial for post-conviction relief.   (Dkt. # 8-5).

Petitioner, appearing pro se, timely filed the instant habeas corpus action on January 3, 2011.

(Dkt. # 1).   He identifies five (5) grounds of error, as follows:

Ground I:    The trial court erred when it failed to dismiss the charged offenses against Petitioner when the State could not prove every element of the charged offenses against Petitioner following the testimony of Jamie Vogt, the forensic interviewer and B.M., the complaining witness.   This error by the trial court violated Petitioner's due process rights to a fundamentally fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

Ground II:    Petitioner received ineffective assistance of trial and appellate counsel.   Both counsels were deficient when they failed to raise a claim that both of B.M.'s allegations on her videotaped police report were unworthy of belief because B.M. had been shown to be untruthful in her interview.   This error by trial and appellate counsel violated Petitioner's due process rights to a fundamentally fair trial as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.

Ground III:    The trial court erred when it allowed the . . . State to admit a false, third-party hearsay statement through cross-examination of a defense witness when the State did not present the alleged declarant of the statement at trial or any other legal proceeding that allowed Petitioner to confront or cross-examine her.   This error by the trial court violated Petitioner's due process rights to a fundamentally fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.

Ground IV:    The trial court erred when it admitted other crimes evidence into Petitioner's second trial after a higher court had previously determined the evidence to be inadmissible and had used that evidence to reverse Petitioner's first

5

conviction. (These allegations are referred to in court record as the "1992 allegations.") This error by the trial court violated Petitioner's due process rights to a fundamentally fair trial as guaranteed by the Fifth, Sixth and Fourteenth amendments to the U.S. Constitution.

Ground V:   The trial court denied Petitioner his right to a public trial when it had improper communication with the jury outside the courtroom. This error by the trial court violated Petitioner's due process rights to a fundamentally fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

(Dkt. # 1). Respondent asserts that Grounds I and II and the substantive claims raised in Ground III and V are procedurally barred, and that Ground IV is a state law claim. (Dkt. # 8).

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner raised Ground IV on direct appeal and Ground II on post-conviction appeal. Grounds I, III, and V, as they are framed in this habeas petition, were not presented to the state courts for review. In his habeas petition, Petitioner frames Grounds I, III, and V as trial court error. In his post-conviction appeal, Petitioner framed these claims as ineffective assistance of trial and appellate counsel. The OCCA reviewed these claims under the two-prong analysis of Strickland v. Washington, 466 U.S. 668 (1984). Strickland does not provide the standard used to review trial court error. Therefore, the Court finds that Petitioner failed to exhaust his claims of trial court error before filing his habeas petition. In light of the procedural posture of this case, it would be futile to require Petitioner to return to state court to exhaust those claims. Thus, although the claims are technically unexhausted, there is an absence of available State corrective process, see 28 U.S.C. § 2254(b)(1)(B), and Petitioner's claims of trial court error are not barred by the exhaustion requirement.

6

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated the merits of Ground IV on direct appeal and the merits of Petitioner's claim of ineffective assistance of appellate counsel on post-conviction appeal. Therefore, those claims will be reviewed pursuant to § 2254(d).

7

1.      **Admission of other crimes evidence (Ground IV)**

In his fourth ground of error, Petitioner claims the trial court erred in admitting "other crimes evidence into [his] second trial after a higher court had previously determined the evidence to be inadmissible." (Dkt. # 1 at 7).   At Petitioner's first trial, the trial court permitted the State to introduce testimony from R.G., Petitioner's former step-daughter.  R.G. testified that, in 1992, when she was three-years old, Petitioner had sexually abused her.  James II, 204 P.3d at 794.  This evidence is referred to in the record as the "1992 allegations."  On appeal, the OCCA "held that this evidence was improperly admitted, and remanded for a new trial."  James v. State, 152 P.3d 255, 257 (Okla. Crim. App. 2007) (hereinafter James I).  The OCCA stated that,

> The other crimes evidence in this case was extensive and prejudicial. It was thirteen years old, the allegations never resulted in filed charges, and there were credibility issues. To some extent the evidence was improperly used as substantive proof of James's guilt of the charged crimes. The jury was not properly instructed on its limited use.

Id.  The dissent urged the Oklahoma Legislature to adopt a version of Rule 413 of the Federal Rules of Evidence in order to address the admissibility of this specific type of evidence.  Id. at 260 (Lumpkin, V.P.J. dissenting).   "A few months after James [I] was handed down, the Oklahoma Legislature enacted 12 O.S. §§ 2413 and 2414, which specifically addressed the type of other-crime evidence challenged in that appeal."  James II, 204 P.3d at 794.  The versions adopted by the Oklahoma Legislature[4] mirrored their federal counterparts, Fed. R. Evid. 413, 414.   Prior to

---

[4]The Oklahoma statutes read, in relevant part, as follows:

> OKLA. STAT. tit. 12, § 2413: A. In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.
> B. In a case in which the state intends to offer evidence under this rule, the attorney

Petitioner's second trial, and pursuant to the new rules, "the State gave notice of its intention to admit evidence [of the 1992 allegations], citing these recently enacted provisions." Id. at 795. The trial court admitted the evidence and Petitioner was convicted a second time, by a jury, of Rape by Instrumentation (Count I) and Lewd Molestation (Count II). Id. at 794.

On direct appeal from his second conviction, Petitioner argued that "the use of other crime evidence against [him] constituted an ex post facto violation" and that the "evidence of a thirteen-year old unproved allegation of [a] crime was more prejudicial than probative and denied [Petitioner] his constitutional right to a fundamentally fair trial." (Dkt. # 8-1). The OCCA disagreed. The court stated that "[l]egislative enactments like §§ 2413 and 2414, which merely *permit* the jury to consider certain kinds of evidence for certain purposes, and are applied to conduct committed before enactment, do not raise *ex post facto* concerns." James II, 204 P.3d at 795. The OCCA

---

for the state shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen (15) days before the scheduled date of trial or at such later time as the court may allow for good cause.
C. This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

OKLA. STAT. tit. 12, § 2414: A. In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
B. In a case in which the state intends to offer evidence under this rule, the attorney for the state shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen (15) days before the scheduled date of trial or at such later time as the court may allow for good cause.
C. This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

concluded that the "application of 12 O.S. § 2414 did not violate constitutional protections from *ex post facto* laws." Id. at 796.

Addressing Petitioner's second proposition of error, the OCCA acknowledged that this type of other crimes evidence will be prejudicial to a defendant on trial for similar sex offenses. Id. at 797. However, the court cautioned that the new provisions should not "be read to absolutely trump all other evidentiary rules and constitutional concerns." Id. The OCCA sought guidance in the legislative history of Fed. R. Evid. 413 and 414, as well as federal judicial interpretation of the Rules. See id. at 797. It noted that the "the probative value of other crimes committed by the accused increases when there is a visible connection between the crimes, or when all of the offenses, taken together, demonstrate a common scheme or plan." Id. at 798 (citing Burks v. State, 594 P.2d 771, 773 (Okla. Crim. App. 1979); Rhine v. State, 336 P.2d 913, 920-22 (Okla. Crim. App. 1958)). The OCCA then affirmed that "the trial court retains the authority – and responsibility – to consider, on a case-by-case basis, whether the probative value of the proffered evidence is substantially outweighed by an unfairly prejudicial effect." Id. The OCCA determined that, even though "[e]vidence that the defendant has committed sex offenses similar to those for which he is on trial will undoubtedly be prejudicial to him," it had to ascertain whether the 1992 allegations were "unfairly" prejudicial to Petitioner. Id. at 797-98.

After its review, the OCCA concluded that the trial court did not abuse its discretion in admitting the testimony about the 1992 allegations because the allegations "showed a visible connection with the instant charges, and demonstrated a common scheme to take sexual advantage of very young girls that were placed in his trust and care." Id. Further, it found that the trial court

10

cautioned the jury several times on the limited use of the propensity evidence.  Id.  Thus, the evidence was not unfairly prejudicial to Petitioner and it affirmed the judgment and sentence.

In Ground IV of this instant habeas petition, Petitioner does not raise the ex post facto claim.[5] Instead, Petitioner claims that the "trial court erred when it admitted [the] other crimes evidence." (Dkt. # 1 at 26).  Petitioner argues that "Rule 2414 did not make the 1992 allegations automatically admissible in Petitioner's second trial."  Id. at 28.  Petitioner argues that the "trial court knew or should have known that 'Sections 2413 and 2414 are clearly subject to the balancing of [OKLA. STAT. tit. 12,] § 2403," and that the trial court should have considered "how clearly the prior act has been proved" and "the credibility of that individual" when determining the relevance of the propensity evidence.  Id. at 27 (quoting Horn v. State, 204 P.3d 777 (Okla. Crim. App. 2009)).  He states that "[w]ithout proof that the 1992 allegations occurred, the allegations could not overcome the clear and convincing evidence required in Horn, thereby establishing that the allegations could not possibly be relevant to Petitioner's case under Rule 2414(a)."  (Dkt. # 14 at 6).  Petitioner concludes that the "1992 allegations clearly did not meet the admissibility requirements of Rule 2414, thereby indicating the trial court did not perform an adequate Rule 2403 balancing test . . . " and therefore, it was a "judicial abuse of discretion."  (Dkt. # 1 at 27, 28).

Respondent contends that Petitioner's claims are a matter of state law and, as a result, "are not cognizable issues" before the Court.  (Dkt. # 8 at 30).  Respondent recognizes, however, that the Court may review Petitioner's claims "to determine whether they rendered Petitioner's trial so fundamentally unfair as to deprive Petitioner of his federal constitutional rights."  Id. (citing Duvall

---

[5]Petitioner did raise this claim in his motion to amend (Dkt. # 20).  However, the Court found this claim did not relate back to the original petition and was time-barred.  See Dkt. # 24.

v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998)).  Respondent does not dispute that Rule 403 balancing will occur in all cases.  Instead, Respondent explains that "Congress[,] in Rule 413[,] expressed a strong preference to favor the probative side due to the nature of sexual offenses, where propensity is more likely to be probative than in other crimes, due to urges some courts have described as 'brutal passions' when child sexual abuse occurs."  Id. at 34 (citations omitted). Respondent states that the Tenth Circuit has stated that "Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice. Congress thus intended that rules excluding this relevant evidence be removed."  Id. at 33-34 (quoting United States v. Enjady, 134 F.3d 1427, 1431 (10th Cir. 1998)). Thus, Respondent argues that the "statutes control Petitioner's trial at issue" and that "the Oklahoma Legislature enacted Sections 2413 and 2414 after the reversal of Petitioner's conviction in his first trial, to allow for the admission of evidence of a defendant's similar crimes in recognition of the unique circumstances of both sexual abuse cases and child molestation cases." Id. at 39.  Therefore, "Petitioner's trial was not rendered fundamentally unfair based upon the admission" of the 1992 allegations.  Id. at 45.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state-law questions). Instead, when "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citations omitted).  Thus, this Court will review Ground IV to determine whether Petitioner was denied due process and a fair trial.  Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief

cannot be granted on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results" (quoting <u>Mayes v. Gibson</u>, 210 F.3d 1284, 1293 (10th Cir. 2000))).

The record before the Court supports the OCCA's findings and conclusions and is not contrary to federal law. The testimony given by both girls was "eerily similar to each other," <u>James II</u>, 204 P.3d at 798 n.8, as the "particulars of the prior crime showed a visible connection with the instant charges." <u>Id.</u> at 798. While Petitioner argues that he was prejudiced by the admission of this evidence, established by the fact that the jury, during deliberations, requesting "more detail of those allegations," (Dkt. # 21-1 at 5), the Court disagrees. The trial court gave clear instructions to the jury as to the proper use of R.G's testimony and the 1992 allegations. <u>See</u> Dkt. # 10-3, Tr. Vol. II at 497. These included several jury instructions regarding the proper use of testimony of "allegedly committed misconduct" and that the use of such testimony was not to be used as proof of guilt or innocence. <u>See</u> Dkt. # 10-6 at 183, 188, Jury Instruction Nos. 11, 16. Therefore, after reviewing the record, the Court finds that Petitioner was not denied due process nor did the trial court's ruling result in a fundamentally unfair trial. Petitioner's claim for habeas relief on Ground IV is denied.

**2.      Ineffective assistance of appellate counsel**

In Ground II, and scattered throughout the habeas petition, are several claims of ineffective assistance of appellate counsel for failing to raise certain claims on direct appeal. Petitioner fairly presented these ineffective assistance of appellate counsel claims to the OCCA in his post-conviction appeal. Applying <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the OCCA rejected Petitioner's claims finding that Petitioner failed to establish that "any of his propositions of error

13

would have or should have changed the outcome of his appeal" and that he did "not established factual innocence." (Dkt. # 8-5 at 2-3).

In this habeas action, Petitioner is not entitled to relief on his claims of ineffective assistance of appellate counsel unless he demonstrates that the OCCA unreasonably applied <u>Strickland</u>. Under the familiar constitutional standard set forth in <u>Strickland</u>, Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. <u>Id.</u> at 687; <u>Osborn v. Shillinger</u>, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. <u>Strickland</u>, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Id.</u> at 689. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689. Therefore, "[r]epresentation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 791 (2011) (quoting <u>Strickland</u>, 466 U.S. at 686).

To establish the second prong, a petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S.

at 694; <u>see</u> <u>also</u> <u>Houchin v. Zavaras</u>, 107 F.3d 1465, 1472 (10th Cir. 1997) (quoting <u>Strickland</u>, 466

U.S. at 694).   Failure to establish either prong of the <u>Strickland</u> standard will result in denial of

relief.   When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance

by failing to raise an issue on direct appeal, the court first examines the merits of the omitted issue.

<u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999).  The Tenth Circuit has explained that,

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable
> to winnow it out even from an otherwise strong appeal, its omission may directly
> establish deficient performance; if the omitted issue has merit but is not so
> compelling, the case for deficient performance is more complicated, requiring an
> assessment of the issue relative to the rest of the appeal, and deferential consideration
> must be given to any professional judgment involved in its omission; of course, if the
> issue is meritless, its omission will not constitute deficient performance.

<u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202 (10th Cir. 2003) (footnote omitted) (citation omitted); <u>see</u>

<u>also</u> <u>Parker v. Champion</u>, 148 F.3d 1219, 1221 (10th Cir. 1998).

After a review of the record and the underlying merits of the ineffective assistance of

appellate counsel claims, the Court finds that Petitioner has failed to demonstrate that any "omitted

issue [was] so plainly meritorious that it would have been unreasonable to winnow it out ."  <u>Cargle</u>,

317 F.3d at 1202.  The Court will discuss each claim below.

### a.   Failure to request dismissal of all charges

In Ground I, Petitioner claims he was denied effective assistance of appellate counsel when

counsel failed to raise the issue that his trial counsel "was deficient when he failed to request a

dismissal of all charges when it was confirmed that B.M.'s testimony was influenced by her family."

(Dkt. # 1 at 14).  Respondent argues that this "allegation is without merit as the record demonstrates

that [trial] counsel properly demurred to the evidence."  (Dkt. # 8 at 19).  Respondent argues that

in Oklahoma, "a demurrer interposed at the close of the State's case in a criminal trial is akin to a

motion to dismiss based upon insufficient evidence." Id. at 18-19.  Therefore, Petitioner's trial

counsel "properly demurred" and his "appellate counsel was not ineffective for failing to raise this

baseless claim." Id. at 19-20.

The record before the Court supports Respondent's argument and refutes Petitioner's claims.

The record shows that Petitioner's trial counsel did "demur to the evidence" and, in the alternative,

made an oral "a motion to dismiss" upon the conclusion of the State's case.  (Dkt. # 10-1, Tr. Vol.

III at 538-39).  Therefore, the Court finds that this claim has no merit.

**b.     Failure to raise claim that B.M. gave inconsistent testimony**

In Ground II, Petitioner claims his appellate counsel was ineffective for failing to raise the

issue that trial counsel "failed to raise a claim that both of B.M.'s allegations on her videotaped

police report were unworthy of belief because B.M. had been shown to be untruthful in her

interview."  (Dkt. # 1 at 5).  Petitioner argues that the failure of trial counsel to raise this claim

foreclosed "a reasonable probability that the video could have been shown to be more prejudicial

than probative, and would have been excluded." Id. at 19.  Respondent argues that Petitioner's trial

counsel "thoroughly cross-examined [B.M.] at trial," including a series of questions about the

locations where the abuse occurred, and Petitioner's trial counsel "objected to the admission of the

videotape of B.M.'s forensic interview."  (Dkt. # 8 at 20, 21).  Respondent acknowledges that there

were "minor inconsistencies in [B.M.'s] statements about where these abuses occurred, which

counsel brought out in his cross-examination, [but] there was never any inconsistency in her

statements that Petitioner committed these acts against her." Id. at 21.  Thus, Respondent argues,

this is a baseless claim.  In Petitioner's supplement, he catalogues examples of B.M's inconsistent

testimony and argues that these show that B.M. has "a propensity to lie [and] therefore, reasonable doubt exists on both charged offenses."   (Dkt. # 25-1 at 24).

The record supports Respondent's position.   It shows that Petitioner's trial counsel questioned B.M. about the inconsistencies in her statements during cross-examination. (Dkt. # 10-2, Tr. Vol. II at 463-471).  This included questioning about the rooms in which the abuse occurred during recross-examination. Id. at 473-74.  The Court finds that Petitioner's trial counsel did address the inconsistencies in B.M.'s statements and testimony.   Therefore, it was a meritless claim for appellate counsel to raise on appeal.  This claim of ineffective assistance of appellate counsel has no merit.

### c.    Failure to raise prosecutorial misconduct

In Ground III, Petitioner claims that appellate counsel provided ineffective assistance in omitting a claim of prosecutorial misconduct[6] based on the prosecutor's presentation of false testimony. (Dkt. # 1 at 24).  Petitioner contends that the prosecutor's conduct violated his rights under the Confrontation Clause.  The complained of conduct concerns a question the prosecutor

---

[6]The Court notes that in Petitioner's supplement, he raises a total of four claims of ineffective assistance of appellate counsel for failing to raise a claim of prosecutorial misconduct for the knowing use of false or misleading evidence.  See Dkt. # 25-1 at 9, 13, 14, 26.  Each claim references a different instance of alleged prosecutorial misconduct: (1) "ADA Hawkins knew or should have known [R.G.'s] testimony was false," (id. at 9); (2) "ADA Hawkins knew or should have known that he would violate Petitioner's U.S. Constitutional rights to confront and cross-examine witnesses used against him if he mentioned either Ms. Kyser or J.K. at Petitioner's second trial unless they were at the trial to testify," (id. at 13-14), (3) "ADA Hawkins knew or should have known that the allegation of abuse regarding J.K. was false," (id. at 14-15); and (4) "multiple instances where ADA Hawkins knew" the statements and/or testimony of B.M. were "false or misleading." (id. at 26).  For reasons discussed in the Order dated November 19, 2013, (Dkt. # 24), only the second claim of ineffective assistance of appellate counsel for failing to raise a claim of prosecutorial misconduct for the knowing use of false or misleading evidence relates back to the original petition and will be addressed by the Court.

17

asked Petitioner's wife during cross-examination.  The question posed was, "[i]sn't it true, ma'am, that Glenda Kaiser [sic] told you, warned you when you got together with Mr. James that you better watch out for any kids that you have because of sexual abuse?" (Dkt. # 10-1, Tr. Vol. III at 565). Petitioner contends that because Ms. Kyser was not a witness, he was deprived of his right to confrontation.  (Dkt. # 1 at 23 (citing Crawford v. Washington, 541 U.S. 36, 68 (2004))). Respondent argues that the line of questioning was proper because of the scope of inquiry on direct examination. (Dkt. # 8 at 24).  Additionally, the witness responded that such a conversation never occurred. Id.  Respondent also argues that this line of questioning concerned "matters which tended to discredit [the witnesses'] testimony . . . ." Id. at 22.  Therefore, "appellate counsel was not ineffective for failing to raise this claim on direct appeal." Id. at 25.

The Court finds that the challenged testimony does not implicate a violation of the Confrontation Clause because the statements were non-testimonial. The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford, 541 U.S. at 38.  The Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59. Thus, the focus of the protection afforded by the Confrontation Clause is formal, testimonial statements.

After a review of the record, the Court finds that the statement by the prosecutor was not testimonial. See United States v. Smalls, 605 F.3d 765, 778 (10th Cir. 2010) (analyzing Crawford and its progeny with respect to the meaning of the term "testimonial").  Furthermore, the record shows that appellate counsel did raise the complained of statement to the OCCA on direct appeal.

18

In Petitioner's appellate brief, appellate counsel laid out the sequence of questioning by prosecutor leading up to the complained of question. See Dkt. # 8-1 at 18. Appellate counsel then argued that "[e]ven though Kellie James responded that she had never had a conversation with Kaiser [sic], the strong suggestion of other improper conduct by Appellant was dragged before the jury. This was improper, and 'the bell could not be unrung.'" Id. (quoting Wright v. State, 325 P.2d 1089, 1093 (Okla. Crim. App. 1958)). In summary, there was no Confrontation Clause violation because the complained of statement was not testimonial. Further, the issue was fairly presented to the OCCA by appellate counsel. The Court finds that Petitioner's claim of ineffective assistance of appellate counsel has no merit.

> **d.     Failure to raise the issue that the 1992 allegations were improperly used to convict Petitioner and failure to raise collateral estoppel**

In Ground IV, Petitioner claims appellate counsel was ineffective for failing to raise the issue that the 1992 allegations were improperly used to convict Petitioner in his second trial. (Dkt. # 1 at 30). Petitioner also claims that appellate counsel was ineffective for failing to raise a collateral estoppel claim. Respondent argues that appellate counsel did raise the claim about use of the 1992 allegations on direct appeal and the OCCA denied relief. (Dkt. # 8 at 29 n.2). Respondent also argues that "Petitioner's reliance upon the doctrine of collateral estoppel is misplaced." Id. at 38. "[C]ollateral estoppel has nothing to do with the trial at issue because Petitioner was not acquitted of anything in his first trial," and the reversal of his first trial "was not based upon insufficient evidence." Id. at 39.

In support of his first claim, Petitioner argues that "the OCCA should have recognized the court's error in admitting the 1992 allegations when they were not established clearly and convincingly, even though Petitioner's appellate counsel did not raise the issue as a claim on direct

appeal." (Dkt. # 1 at 28). This claim, however, is without merit. The record shows that Petitioner's appellate counsel did raise the issue of admissibility of the 1992 allegations on direct appeal. See Dkt. # 8-1. Appellate counsel argued that "evidence of a[n] . . . unproved allegation of crime was more prejudicial than probative and denied [Petitioner] his constitutional right to a fundamentally fair trial." Id. at 12. Counsel stated that "[t]here was no fairness to Appellant in either the first trial (which was reversed) or this second trial, where the same error occurred again. . . . [T]he prejudice to Appellant was overwhelming and certainly outweighed any probative value to the R.G. testimony . . . ." Id. at 16. Counsel concluded her argument by stating that "the trial court's admission of evidence of the 1993 [sic] allegations . . . was an abuse of discretion that denied [Petitioner] a fair trial and due process of law." Id. at 18. That record shows that Petitioner's appellate counsel did raise the underlying claim on direct appeal. Therefore, Petitioner's first claim is without merit.

Next, Petitioner argues the doctrine of collateral estoppel applies because "any evidence that is ruled inadmissible by a higher court (because the evidence was not established by clear and convincing evidence as required by law) cannot be made clear and convincing by a lower court (and in Petitioner's case, by a new rule of law)." Id. at 28. Therefore, because "there were no changes to the 1992 allegations or the State's clear and convincing requirement for other crimes evidence under Rule 2414," collateral estoppel applies. Id.

The Court finds that the doctrine of collateral estoppel is not applicable. "Collateral estoppel is an awkward phrase, but it . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). First, the 1992 allegations were not an issue of ultimate fact in the first trial. Petitioner was not on trial and

acquitted of the 1992 allegations, nor was there a final judgment on the 1992 allegations.  See United States v. Corley, 824 F.2d 931 (11th Cir. 1987) (stating that "collateral estoppel in the criminal context prohibits the government from forcing a defendant to defend against charges or factual allegations which he overcame in an earlier trial"); United States v. Lacey, 982 F.2d 410, 412 (10th Cir. 1992) (stating that res judicata only operates as a bar to claims when there has been a final judgment and that "[a] judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel").  The OCCA reversed and remanded Petitioner's first conviction for a new trial based on the then-existing rules of evidence in Oklahoma and jury instructions, not because Petitioner was acquitted of the 1992 allegations.  See James I, 152 P.3d at 257 ("To some extent the evidence was improperly used as substantive proof of James's guilt of the charged crimes. The jury was not properly instructed on its limited use.").  Additionally, Oklahoma's evidentiary laws were not the same at both trials.  The trial court relied on the newly adopted rules of evidence to admit the 1992 allegations in the second trial.[7]  Finally, the 1992 allegations were other crimes evidence, admitted under the newly adopted rules of evidence to demonstrate commonality between the two accusations of child molestation. A collateral estoppel claim on appeal had little merit and was not a compelling claim.  Therefore, Petitioner's claim of ineffective assistance of appellate counsel for failing to raise the issue of collateral estoppel has no merit.

---

[7]The trial judge, in ruling on defense's motion in limine to omit prior bad acts, stated, "[a]s I indicated, I believe, although it was reversed, I believe that with the state of the law now, the prior incident would be admissible and so will be the discussion concerning that."  (Dkt. # 10-2, Tr. Vol. I at 118).

      e.      **Failure to raise claim of improper communication with jury by trial judge**

Finally, in Ground V, Petitioner claims ineffective assistance of appellate counsel for "failing to raise the claim that the judge had improper communication with the jury." (Dkt. # 1 at 31). Petitioner claims the improper communication occurred in response to the three notes from the jury during its deliberations.[8] Id. at 30-32. The judge responded, in writing, to two of the three notes, see Dkt. # 10-6, O.R. at 559-561, and by taking action in response to the third note, see Dkt. # 10-1, Tr. Vol. III at 637. Petitioner argues that it was "reversible error for the trial judge to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel." Id. at 31 (internal quotations omitted). Therefore, his appellate counsel was ineffective for failing to raise the claim. Id. Respondent argues that the actions of the trial judge were in compliance with Oklahoma law, or "at best a technical violation," and "therefore, no error occurred." (Dkt. # 8 at 27).

The United States Supreme Court has stated, "[o]ur cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983). However, the Court has also "recognized the necessity for preserving society's interest in the administration of criminal justice." Id. at 118 (citing United States v. Morrison, 449 U.S. 361, 364 (1981)); see also United States v.

---

[8]The first note reads, "Did [R.G.] actually say in 1992/1993 that the accused 'peed in my mouth'?" The trial judge's reply, "In regard to [R.G.], you have the testimony." (Dkt. # 10-6, O.R. at 559).

      The second note reads, "Are there transcripts for the phone message?" The trial judge's reply, "No." Id. at 560.

      The third note reads, "Can we have the CD of the Detective and defendant?" The trial judge did not reply in writing. Id. at 561.

Gagnon, 470 U.S. 522, 526 (1985) (noting that defendant's presence is required by due process "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"). Thus, "the Constitution 'does not require a new trial every time a juror has been placed in a potentially compromising situation.'" Rushen, 464 U.S. at 118 (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)); Gagnon, 470 U.S. at 526-27 ("The Court also cautioned . . . that the exclusion of a defendant from a trial proceeding should be considered in light of the whole record.").

After a review of the record, this Court finds that the communications between the trial judge and the jury did not deprive Petitioner of his due process rights.  The communications between the trial judge and jury consisted of three notes.  The trial judge responded in writing to the first two notes.  See supra note 8.  The record does not indicate whether the trial court contacted either party prior to replying to these two notes, nor does Respondent argue that the trial court did contact counsel.  Instead, Respondent argues that "the trial court's response was at best a technical violation" of Oklahoma law and that "[n]o other response would have been proper with or without the presence of counsel and Petitioner."  (Dkt. # 8 at 27).  In response to the third note, requesting "the CD of the Detective and defendant," the trial judge brought the jury back into the courtroom to view the recording.  Prior to showing the interview, the trial judge told the jury, "I have asked both counsel if they wanted to be here.  They've declined that.  Because . . . of the logistics that we have, we're going to play it in here, and you can see it as often as you want to, but as we view it here, don't deliberate about it."  (Dkt. # 10-1, Tr. Vol. III at 637).  Additionally, after the jury reached a verdict, but prior to the jury returning to the courtroom, the trial judge noted that Petitioner's defense counsel had requested the recording be "back there with the jury" during the deliberations.  Id. at 638.  The trial judge also summarized, on the record, the notes received from

23

the jury and his responses, including the showing of the recorded interview between the detective and Petitioner to the jury.  He stated that he "contacted both [the State and defense counsel], brought [the jury] in, we played it, told them not to talk, discuss, deliberate while they were here.  They saw it and left."  Id. at 638-39.  Neither party objected to the two written responses from the judge.  Id.

Although communications with the jury did occur outside Petitioner's presence, in light of the record as a whole, these communications did not violate Petitioner's constitutional right to due process or a fundamentally fair trial.  Gagnon, 470 U.S. at 526-27.  Further, Petitioner has failed to demonstrate how the communication with the jury "undermined the proper functioning of the adversarial process' [such] that the defendant was denied a fair trial."  Harrington, 131 S. Ct. at 791.  This claim has no merit.

In conclusion, Petitioner has failed to show that appellate counsel's performance fell below that of a reasonably competent attorney in a criminal case.  Petitioner has failed to show that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, Strickland.  Therefore, the OCCA's opinion is entitled to deference by this Court and Petitioner has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).  Petitioner's request for relief based on ineffective assistance of appellate counsel is denied.

## C.    Procedural bar

Petitioner's remaining claims in his habeas petition are those of ineffective assistance of trial counsel and trial court error.  Respondent asserts that the OCCA's "procedural bar must be respected."  (Dkt. # 8 at 5). Petitioner argues that all of his "claims are raised under ineffective assistance of appellate counsel [and t]herefore, Petitioner is not procedurally barred."  (Dkt. # 14 at 1).

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (citation omitted).

When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special

25

appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citations omitted).

When a state court imposes an independent and adequate procedural bar, this Court may not consider the claims unless the petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 495-96 (1986); Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); Schlup v. Delo, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

### 1.    Ineffective assistance of trial counsel

Respondent argues that the "OCCA's procedural bar must be respected regarding Petitioner's claims of ineffective assistance of trial counsel raised in Grounds I and II and regarding his substantive claims raised in Grounds III and V." (Dkt. # 8 at 5). The Court notes that, in addition to a substantive claim, Petitioner raises an additional claim of ineffective assistance of trial counsel

in Ground V.  Id. at 31.  Thus, Petitioner alleges in Grounds I, II, and V that his trial counsel

provided ineffective assistance when he (1) "failed to request a dismissal of all charges when it was

confirmed that B.M.'s testimony was influenced by her family," see Dkt. # 1 at 14, (2) failed to

"raise the claim that B.M. had testified contrary to her police report," id. at 19, (3) failed to conduct

adequate pretrial investigation into B.M.'s statements to police, id. at 20, and (4) failed "to raise a

claim that the judge had improper communication with the jury," id. at 31.  Petitioner presented

claims of ineffective assistance of trial counsel to the OCCA in his post-conviction appeal.  In

affirming the state district court's denial of post-conviction relief, the OCCA found that "[a]ll issues

which were raised and decided on direct appeal are barred from further consideration by  res

judicata, and all issues which could have been previously raised but were not are waived."  (Dkt. #

8-5 (citing OKLA. STAT. tit. 22,§ 1086)).

Applying the principles of procedural default to these facts, the Court concludes that all

claims of ineffective assistance of trial counsel raised in the petition are procedurally barred from

this Court's review.  After reviewing the record in this case in light of the factors identified in

English, the Court concludes that the procedural bar imposed by the OCCA was independent and

based on state law grounds adequate to preclude habeas corpus review.  Based on OKLA. STAT. tit.

22, § 1086, the OCCA routinely bars claims that could have been but were not raised on direct

appeal.  The state court's procedural bar, as applied to Petitioner's claims, was an "independent"

ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis

for the state court's holding."  Maes, 46 F.3d at 985.

For purposes of the first requirement identified in English, the Court finds that Petitioner had

the opportunity to confer with separate counsel on appeal.  At trial, Petitioner was represented by

attorney Kevin Adams.  On appeal, Petitioner was represented by attorney Lisbeth L. McCarty from the Oklahoma Indigent Defense System.  The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism.  English, 146 F.3d at 1263-64.  Throughout his petition, Petitioner states and makes inferences that his claims are obvious from the trial record.

The record reflects that Petitioner's trial counsel asserted a motion to dismiss at the conclusion of the State's case and conducted a thorough cross-examination of B.M., which included questions highlighting inconsistences in her previous statements and testimony.  See Dkt. # 10-1, Tr. Vol. III at 538-39; Dkt. # 10-2, Tr. Vol. II at 463-471.  Petitioner's trial counsel also objected to the admission of the recorded interview with B.M.  See Dkt. # 10-1, Vol. III at 638.  Finally, the record reflects that the trial judge contacted both the State and Petitioner's trial counsel when the jury requested to see the recording "of the detective and defendant" during their deliberations.  Id.  Therefore, based on the record cited above, the Court finds that Petitioner's claims of ineffective assistance of trial counsel can be resolved upon the trial record alone.  Having satisfied both prongs of English, the procedural bar imposed by the OCCA on Petitioner's claims of ineffective assistance of trial counsel will be given deference.

If, however, Petitioner can demonstrate "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, this Court cant consider Petitioner's claims of ineffective assistance of trial counsel.  Throughout his petition and "brief in support," Petitioner attributes the failure to raise the defaulted claims to ineffective assistance of appellate counsel.  See, e.g., Dkt. # 1 at 5, 6, 8.  It is well established that, in certain circumstances, counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural

default.  See Murray, 477 U.S. at 488-89. However, the assistance provided by appellate counsel must rise to the level of a constitutional violation under the two-pronged standard established in Strickland.

The Court addressed Petitioner's claims of ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel, see Part B(2), above, and found the claims to be without merit. As a result, Petitioner's ineffective assistance of appellate counsel claims cannot serve as "cause" to overcome the procedural bar applicable to the claims of ineffective assistance of trial counsel.  Accordingly, those claims are procedurally barred from consideration by the Court unless the "fundamental miscarriage of justice" exception is applicable.

Petitioner argues that "[t]he reason the State had no evidence of a crime in Petitioner's case is because Petitioner did not commit the charged offenses."  (Dkt. # 1 at 13).  Petitioner also states that he is "factually innocent of the charged offense of lewd molestation." Id. at 18.  He asserts that "proof beyond a reasonable doubt was not achieved,"  (Dkt. # 25-1 at 16), and that "if false, misleading and unfairly prejudicial evidence would not have been admitted," then there is a "reasonable probability that the outcome of Petitioner's case would have been different." Id. at 10. However, Petitioner fails to introduce new evidence or make a colorable showing of factual innocence.  See Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404).  Therefore, the Court concludes that Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

Having failed to demonstrate cause and prejudice or that a fundamental miscarriage of justice will result if this Court does not consider his claims, the Court finds that Petitioner's claims of

ineffective assistance of trial counsel are procedurally barred. Habeas corpus relief requested in those grounds shall be denied on that basis.

### 2.    Trial court error (Grounds I, III, and V)

As noted above, Petitioner raises claims of trial court error, identified in Grounds I, III, and V, that were not presented to the OCCA in the same procedural posture in which they are presented in this habeas petition.  In the state courts, Petitioner raised the substance of Grounds I, III, and V as claims underlying allegations of ineffective assistance of trial and/or appellate counsel.  The OCCA reviewed these claims under the framework of Strickland, and not trial court error.

Additionally, the Court finds that if Petitioner were to return to state court to present the defaulted claims, the OCCA would impose a procedural bar based on independent and adequate state procedural grounds.  See Maes, 46 F.3d at 985. An "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." Anderson v. Sirmons, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quoting Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002)).

An anticipatory procedural bar will be applied to deny Grounds I, III, and V unless Petitioner shows "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of the claims.  Coleman, 501 U.S. at 750; Maes, 46 F.3d at 985.  The claims of trial court error raised in Grounds I, III, and V have never been presented to the OCCA.  Although Petitioner attributes the failure to raise the claims on direct appeal to ineffective assistance of appellate counsel, the only claims of ineffective assistance of appellate counsel claims raised on post-conviction appeal challenged appellate counsel's failure to raise claims of ineffective assistance of trial counsel.  None of the claims was related to appellate counsel's failure to raise claims of trial

court error.  See Murray, 477 U.S. at 488-89 (requiring that an ineffective assistance claim must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  In addition, Petitioner offers no explanation for his failure to raise these claims in his post-conviction proceeding.  That failure resulted in a second procedural default of the claims.  For those reasons, the Court finds Petitioner has failed to demonstrate "cause and prejudice" sufficient to overcome the procedural bar applicable to his claims of trial court error.  Further, as stated above, Petitioner fails to introduce new evidence or make a colorable showing of factual innocence.  Therefore, the Court concludes that Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception.

 Having failed to demonstrate cause and prejudice or that a fundamental miscarriage of justice will result if this Court does not consider his claims, the Court finds that Petitioner's claims of trial court error, as raised in Grounds I, III, and V, are procedurally barred. Habeas corpus relief requested in those grounds shall be denied on that basis.

D.    **Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In addition, when the court's ruling is based on procedural grounds, the petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason. <u>See Dockins v. Hines</u>, 374 F.3d 935 (10th Cir. 2004). As to the claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the claims on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.   The clerk shall substitute Terry Martin, Warden, in place of Jane Standifird, Warden, as party respondent.

2.   The petition for writ of habeas corpus (Dkt. # 1), as supplemented (Dkt. # 25), is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate judgment shall be entered in this matter.

       **DATED** this 31st day of December, 2013.


**TERENCE KERN**
**United States District Judge**

33